IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMIE LYNN WYBLE, | ) | Bankruptcy Case No. |
| | ) | 07-21257-drd-7 |
| Debtor. | ) | |
| _____ | ) | |
| G.E. MONEY BANK, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 07-2047 |
| | ) | |
| JAMIE LYNN WYBLE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## __MEMORANDUM OPINION__

This adversary comes before the Court on the Complaint to Determine Dischargeability of Debt ("Complaint") filed by Creditor G.E. Money Bank ("Creditor" or "Plaintiff") against Jamie Lynn Wyble ("Debtor" or "Debtor"). Creditor seeks to have the debt owed to it by Debtor deemed nondischargeable under 11 U.S.C. § 523(a)(2)(A). This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies the claim in Creditor's Complaint and finds that Debtor's obligations to Creditor are dischargeable.

### I. FACTUAL BACKGROUND

Debtor received a bachelor's degree in criminal justice from Columbia College and has worked for two years as a probation officer for the State of Missouri. Her husband has been

employed by Kraft for fifteen years and also has worked part-time for Wal-Mart.  In 2006, Debtor's federal income tax return indicated that their total annual income was $73,078.

On April 25, 2007, Debtor received a pre-approved credit solicitation from Creditor in the amount of $25,000 with an annual interest rate of 16.99%.  Debtor contacted Creditor and requested credit approval.  During the phone call, Debtor provided certain information, such as her social security number, employer and total household income.  Thereafter, Creditor performed a credit check on Debtor and approved her for a $15,500 line of credit.  Debtor testified that she intended to use the funds to consolidate her credit card debt into the G.E. account because it offered a lower interest rate.  Specifically, she wanted to pay approximately $14,000 to Bank of America on a credit card with an annual interest rate of 20.99%.  Debtor's credit report indicates that none of her open credit cards were ever paid late.  Defendant's Ex. Q.

On April 30, 2007, Creditor issued a check to Debtor and she deposited it into her checking account on May 8, 2007.  Defendant's Exs. A & B.  On May 16, Debtor paid $14,000 to Bank of America.  Defendant's Ex. G.  She testified that she used the balance of the line of credit from Creditor to pay for items such as groceries, gas and other bills.

On May 29, 2007, Debtor was diagnosed with depression and on May 31, she was induced prematurely and gave birth the a son.  Debtor testified that due to her depression and having the child premature, the household income and expenses changed unexpectedly.  Her husband testified that he decreased his hours at Wal-Mart from a high of 36 hours a week to 16 hours per week in order to take care of Debtor and their son.  Debtor's Schedule I indicates an average monthly income of $4,259.88 but Debtor testified that there had been a decrease in her husband's income from April 2007.  Debtor testified that her income has not changed from 2006

2

to 2007.  Debtor also testified that their expenses increased in an amount they had not anticipated due to the need to purchase formula, supplies and day care.  Schedule J indicates average monthly expenses in the amount of $4,259.27.

On June 19, 2007, Debtor consulted an attorney regarding options relating to her financial situation.  On August 17, 2007, Debtor filed a bankruptcy petition under Chapter 7.

## II.  DISCUSSION AND ANALYSIS

### A.  Exceptions to Discharge

#### 1.  General Principles

In a nondischargeability claim under 11 U.S.C. § 523(a), the burden falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions from discharge, however, are strictly construed so as to give the maximum effect to the policy of the Bankruptcy Code to provide debtors with a "fresh start." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) affirming the Eighth Circuit's opinion in *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc) (debt cannot be exempt from discharge unless it is based on an intentional tort); *Adams v. Zentz*, 157 B.R. 141, 144 (Bankr. W.D. Mo. 1993).

#### 2.  False Representation

Section 523(a)(2)(A) provides that a Chapter 7 discharge does not release a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation or actual fraud, other than a statement representing the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). To establish fraud under that section, the following five elements must

3

be proven: (1) that the debtor made representations; (2) that at the time the representations were made the debtor knew them to be false; (3) that the debtor made the representations with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on the representations; and (5) that the creditor sustained the alleged injury as a proximate result of such representations. *Field v. Mans*, 516 U.S. 59, 63 n. 4 (1995); *In re Grause*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000); *In re Ray*, 2008 WL 268991, *1 (Bankr. W.D. Mo. 2008); *In re Willis*, 190 B.R. 866, 868 (Bankr. W.D. Mo. 1996); *In re Williamson*, 181 B.R. 403, 406 (Bankr. W.D. Mo. 1995);  *In re Holmes*, 169 B.R. 186, 189-90 (Bankr. W.D. Mo. 1994); *In re Friend*, 156 B.R. 257, 260 (Bankr. W.D. Mo. 1993); *In re Branch*, 158 B.R. 475, 476 (Bankr. W.D. Mo. 1993); *In re Bartlett*, 128 B.R. 775, 779 (Bankr. W.D. Mo. 1991).

Courts have recognized that because it is nearly impossible to adduce direct proof of an individual's knowledge, intention, and purpose, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.  *Grause*, 245 B.R. at 99; *Willis*, 190 B.R. at 868; *Holmes*, 169 B.R. at 190.  Therefore, case law has developed a list of objective or circumstantial factors which a creditor might use to prove the second and third elements. These objective or circumstantial factors, much like the "badges of fraud," are:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges are made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

4

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The debtor's financial sophistication;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Grause*, 245 B.R. at 99; *Ray*, 2008 WL 268991 at *2; *Willis*, 190 B.R. at 869; *In re Grayson*, 199

B.R. 397, 402-03 (Bankr. W.D. Mo. 1996); *Williamson*, 181 B.R. at 406-07; *Holmes*, 169 B.R. at

190; *Friend*, 156 B.R. at 261. The ultimate issue in this case is whether Debtor acted with

fraudulent intent, and that involves more than a mechanical application of objective factors. It

involves a determination of Debtor's credibility. *See Grayson*, 199 B.R. at 403. The Court must

determine whether all the evidence leads to the conclusion that it is more probable than not that

the debtor had the requisite fraudulent intent. *See Ray*, 2008 WL 268991 at *2.

With respect to the first element, this court has held, as have others, that credit card use

carries the implied representation that the buyer has the intention and the ability to repay the

charge[1]. *Ray*, 2008 WL 268991 at *1; *In re Pickett*, 234 B.R. 748, 755 (Bankr. W.D. Mo. 1999);

*Willis,* 190 B.R. at 868 -869; *Branch*, 158 B.R. at 477-78 (noting that this is the majority view);

---

[1]This Court recognizes that the view that a debtor making a purchase with a credit card also makes a representation of ability to pay is not universally held. Nonetheless, the Court believes that is an appropriate position for several reasons. First, as indicated by the cases cited above, that has consistently been the law in this district. Second, as this Court stated in a slightly different context in *In re Beza*, 310 B.R. 432 (Bankr. W.D. Mo. 2004), the Court believes it is consistent with the expectation and understanding of the parties in these transactions. It is not unreasonable to suggest that a credit card lender, just as the payee of a check, reasonably expects the debtor has both the intent and the ability to make payment for the credit extended. Third, this Court does not share the concerns of some of those who have rejected the presumption of ability to pay. Some of the courts who have rejected that presumption have done so in part because they believe it improperly shifts the burden of proof to the debtor. *See, e.g., In re Olwan*, 2004 WL 1770691 (Bankr. E.D.N.Y. 2004). This Court respectfully disagrees. While the Court may hold that an implied representation of ability to pay is made, it is still incumbent upon the creditor to establish all other elements of the claim of fraud, including that the Debtor made the representations knowing they were false and with an intent to deceive. In addition, the creditor must still prove reliance and damage.

*Bartlett,* 128 B.R. at 779.  Therefore, the first element  is met here.  The Court next examines the

second element: whether the evidence proves that at the time Debtor made the representation that

she would repay Creditor that Debtor knew such representation to be false.  The Court will apply

the above factors to the evidence presented in this case.

Creditor contends that the fact Debtor consulted an attorney only 20 days after the birth

of her son and six weeks after the deposit of the loan proceeds is evidence that Debtor did not

intend to repay the debt.  Debtor testified that she consulted an attorney approximately 42 days

after she incurred the charges and that she was merely investigating options due to the premature

birth of her son and the decision that her husband would reduce his work hours to care for her

and their son.  She testified that she had not yet made a determination to file bankruptcy.  In fact,

she did not receive the requisite credit counseling for approximately another month and did not

file the petition until another month after that.  Creditor also points out that, prior to her

bankruptcy filing, Debtor made only one payment on the GE account.  While that is true, it is

also true, as Creditor points out, that that one payment was actually made after Debtor consulted

her attorney, which indicates that she had not necessarily decided to file bankruptcy and not to

repay this debt at the time she made that consultation.  Based on the evidence, the Court finds

that, in this case, the delay and the surrounding circumstances were not such as to support an

inference of fraud based on the date of consultation with counsel.

With regard to factors 4 and 5, which encompass a debtor's financial condition, Debtor

made only the initial charge of $15,000, which she testified was to be used to pay off a credit

card with a higher interest rate.  Debtor testified that at the time she made the charge that she had

been employed by the State of Missouri for two years and her husband had been employed by

Kraft for 15 years and also worked a second part-time job at Wal-Mart.  Debtor reported total

annual income of $73,078 on her 2006 Federal tax return.  At the time Debtor applied for credit

with Creditor, her credit history indicated she was current and on-time with all of her credit card

payments.  Creditor also makes several arguments based upon the evidence with regard to

Debtor's prior pattern of credit card usage and payment.  In an apparent attempt to demonstrate

that Debtor's financial condition was compromised, it contends that in the period just prior to the

extension of credit Debtor had made several draws on other credit cards which had not been fully

paid and that she was making only minimum payments on these debts during that period rather

than paying them in full as she had done previously.  Debtor responded by pointing out that

Creditor has identified only a few of Debtor's numerous credit card accounts and that Debtor had

not in fact paid off all such accounts in full during this earlier period.  In addition, the evidence

demonstrates that Debtor was current on these obligations, having made at least the minimum

payment, and was never late. *See* Defendant's Ex. Q.  Accordingly, Debtor apparently had her

credit card debt under control during the period immediately prior to drawing on the GE Money

Bank loan.

 Debtor testified that she took out this loan to consolidate higher interest credit card

balances.  Creditor notes that Debtor did not use the loan proceeds to pay off the balances on a

few credit cards which had higher interest rates[2].  As Debtor points out, however, the principal

credit card with a higher balance- the Bank of America card, was in fact paid off.  Others, cited

---

[2]Sam's Club balance of $193.46 on May 17 with an interest rate at 23.15%; Sutherland's balance of $824.25 on May 22 with an interest rate at 24.15%; Lowe's balance of $142.72 in May with an interest rate at 21%; Commerce Bank balance of $1,526 in May with an interest rate at 19.15%.  *See* Def. Ex. Q; Plaintiff's Exs. 4, 6, 9, 10, 11 & 14.

by Creditor, had relatively insignificant balances.  Creditor also notes that Debtor's monthly payment after the loan from GE, was actually higher than the payment required to Bank of America.  The difference was relatively insignificant, however, and the payment was higher because she drew more from GE than the balance on the Bank of America loan.  Debtor's complaint had not been with the amount of the payment, but rather with the interest rate and her resultant inability to significantly reduce the principal with the payments she was making.

In April 2007, when Debtor applied for the credit from Creditor, she was due to have a baby on June 30.  Debtor testified that she was diagnosed with severe depression and that her son was delivered early on May 31, 2007.  Debtor testified that after the birth of her son her household income and expenses changed significantly.  Her husband cut his hours at Wal-Mart from a high of 36 hours per week to only 16 hours per week in order to care for Debtor and their son.  Also, Debtor testified that her household expenses increased due to having to purchase items such as baby formula, supplies and day care. Debtor also testified that the charge was not for luxuries but that $14,000 was used to pay off a credit card with a higher interest rate and the remaining amount was used to purchase items such as food and gas and that her buying habits did not change after receipt of the funds.  Debtor's credit report indicates that she was never late on her open credit cards and that she ran a balance on a few of them dating back to 2005.  *See* Defendant's Ex. Q.

Creditor disputes Debtor's assertion that household income declined after their child was born and reviewed checking account deposits from the period surrounding the time of the loan and asserts that the amounts are nearly the same as Debtor's income at the time of the filing of the petition.  *See* Defendant's Exs. D, E, & F.  This analysis is not based upon an examination of

8

the pay stubs but on an examination of checking account deposit records.  Those deposits occasionally involve other amounts.  In addition, the statement cutoff date is in the middle of the month which makes comparisons of actual calendar months difficult, particularly considering the fact that occasionally, Debtor or her spouse had more than two paychecks.  The reduction in income caused by the premature birth of Debtor's son is, however, confirmed by her testimony and the documentary evidence.  Her husband immediately lost two paychecks from his Wal-Mart employment and later reduced his hours.  The reduction in hours resulted in a reduction in net pay of approximately $457.57 according to Debtor's Exhibit N which compares Debtor's income in April, the month in which she responded to the solicitation and requested the loan, and the month of August, the month in which the Chapter 7 petition was filed.

On the expense side, Creditor argues that Debtor's ability to pay must have been impaired because the expenses shown on Schedule J do not reflect minimum payments on her credit card accounts which, when included, caused monthly expenses to exceed income.  *See* Defendant's Ex. K.  Despite this, however, the uncontradicted evidence from Debtor and the credit report is that she was never late on any of her credit card accounts before filing her bankruptcy petition.  *See* Defendant's Ex. Q.  Creditor also argues that Debtor should have known that her expenses would increase after the birth of her child.  While that may be true, the extent of the increase was what Debtor apparently did not anticipate.  As an example, she cites the fact that she had intended to breast feed her child but had problems with that and, therefore, had to expend money to buy formula instead.  Finally, it is not Debtor's burden to prove that her financial circumstances changed.  It is Creditor's burden to prove that she committed fraud, a burden which this Court concludes it did not satisfy.

Debtor also points out, and the Court agrees, that if Debtor had intended to file bankruptcy at the time of incurring the obligation to Creditor, that she could just as easily have filed and sought a discharge of the credit cards she already had.  Creditor presented no compelling evidence as to why Debtor would have sought to lower her interest rate on her credit card payments if she intended to file bankruptcy.  The Court also has taken into consideration Debtor's credibility and determined that her explanation that she intended to pay Creditor but that her income and expenses changed after the early birth of her baby is a plausible explanation, especially in conjunction with the fact that prior to the change in circumstances she had been current on all of her credit card payments.  Debtor testified that at the time she sought the credit from Creditor that she intended to pay off the loan and that the funds were sought from Creditor simply to have a reduced annual percentage rate.

Regarding factors eleven and twelve, Creditor presented no evidence to support the finding that there was a sudden change in Debtor's buying habits nor that any of the loan proceeds were used for luxuries.  Debtor testified that the funds not used to pay off the Bank of America card were used to purchase groceries, gas and other necessities.

After applying the applicable factors to the evidence presented, the Court concludes that Creditor has not proven by a preponderance of the evidence the second element: that at the time Debtor incurred the obligations to Creditor, she did not intend or know that she would be unable to repay such obligations.  The Court need not address the last three elements, for if Debtor did not knowingly make a false representation, she could not have intended to deceive Creditor, nor could Creditor have relied upon the false representation to its detriment.  For all those reasons, Debtor's obligation to Creditor is dischargeable.

10

## III.  CONCLUSION

For all the reasons cited above,  the Court finds the debt at issue owed to Creditor by

Debtor is dischargeable.  A separate Order will be entered in accordance with Bankruptcy Rule

9021.


Dated:  _____May 14, 2008_____          _____/s/ Dennis R. Dow_____
                                          THE HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE



Copies to:
Allison E. Bartsh
Jeffrey C. Daniel
Cecilia E. Young
Syreeta L. McNeal

11